IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:12-CR-20-BR

| UNITED STATES OF AMERICA | ) | |
| --- | --- | --- |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| HYSEN SHERIFI, | ) | |
| SHKUMBIN SHERIFI, and | ) | |
| NEVINE ALY ELSHIEKH, | ) | |
| | ) | |
| Defendants. | ) | |

This case came before the court on 29 May 2012 for a status conference. The court also heard argument on the government's: (1) written motion (D.E. 128) for reconsideration of the portion of the court's 2 May 2012 Order (D.E. 121) directing the government to produce transcripts of all audio and video recordings; (2) written motion (D.E. 132) for extension of the time for production of transcripts; and (3) oral motion for exchange of transcripts (*see* 1st Minute Entry after D.E. 136). The conference began with a public session attended by counsel for defendants Shkumbim Sherifi and Nevine Elshiekh; defendant Hysen Sherifi, serving as his own counsel; defendant's standby counsel, Robert McAfee; and counsel for the government. This session was followed by an ex parte session with all defendants and a separate ex parte session with counsel for defendant Shkumbim Sherifi. This order sets out rulings based on proceedings at the public session of the conference. The court has addressed by separate order (D.E. 138) the only issues presented at the sealed ex parte session requiring further action not included in this order. In instances where this order reflects modification of the oral directives issued at the conference, this order controls.

1. **Additional Pre-Arrest Recordings.** At the status conference on 26 April 2012, the government represented that it had in its possession approximately 125 hours of audio and/or

video recordings. (2 May 2012 Order 2-3 ¶ 4). It has since disclosed that it actually has substantially more recordings than that.

First, in its motion for reconsideration, the government stated that it had produced to defendants a total of 187.07 hours of recordings. The government broke these recordings into two main groups—98.9 hours of recordings made before the arrest of Shkumbim Sherifi and Elshiekh (on 21 January 2012) and 88.17 hours of recordings made after the arrest.

Second, the government also stated in the motion that it had identified 21 compact discs ("CDs") of recordings not included in the foregoing recordings that it believes contain Jencks material. At the 29 May 2012 conference, the government revised the number of CDs to 23. It stated that they contained approximately 300 hours of pre-arrest recordings. These recordings have not yet been produced to defendants. Upon inquiry by the court at the conference, the government confirmed that these additional recordings, along with the recordings previously identified to the court, constitute the total universe of recordings that will be involved in this case, except for recordings, if any, that are subsequently made.[1]

Therefore, the recordings involved in this case be summarized as follows:

| **Recording Type** | **Total Hours** | **Albanian** | **Arabic** | **English** |
|---|---|---|---|---|
| Pre-Arrest Recordings | | | | |
|    Produced | 98.9 | 29.7 | 0 | 69.2 |
|    Not Produced | 300 (approx.) | Not Determined | Not Determined | Not Determined |
| Post-Arrest Recordings | 88.17 | 26.2 | 42.12 | 19.85 |

---

[1] As the chronology above illustrates, the government has already modified on several occasions its representations to the court and defendants regarding the volume of recordings it has. The court will take appropriate action should the government attempt to disclose and rely upon any additional recordings that it should have already disclosed.

2

The government explained that a significant number of the unproduced pre-arrest recordings may be either duplicate recordings or recordings of persons not involved in this case and that it was currently reviewing these recordings to eliminate the irrelevant ones. The government represented that within 45 days it could cull from these recordings those that it deems relevant and produce them to defendants, but would designate Jencks materials in the culled recordings by the deadline for Jencks disclosure set by the court. Defendants consented to this proposal. They rejected specifically the option of receiving sooner all 300 hours of recordings, without the benefit of the culling by the government, because of the volume involved.

IT IS THEREFORE ORDERED that:

a. The government shall produce the culled recordings to defendants no later than 13 July 2012.

b. The government shall designate those portions of the culled recordings it contends are Jencks material by the Jencks material disclosure deadline of 22 October 2012 (*see* Pretrial Scheduling Order (D.E. 150), at 2, Event No. 15.

**2. Transcripts of Post-Arrest Recordings.** Defendants stated at the 29 May 2012 conference that they do not seek to have the government transcribe the post-arrest recordings, provided that the government gives them notice 45 days prior to trial of any post-arrest recordings it intends to present at trial. Defendant's proposal is based on their expectation that the post-arrest recordings will not contain relevant evidence. The government consented to this proposal.

The court finds this proposal acceptable subject to two modifications. First, the court believes that the disclosure should come somewhat earlier than proposed to ensure that its

disclosure does not disrupt trial preparation. Specifically, it is important that defendants have sufficient time to identify and possibly transcribe any recordings they may wish to present in response to those designated by the government. The deadline will therefore be approximately two months before trial, 7 September 2012.

Second, the government should produce transcripts of any post-arrest recordings it intends to play for the jury at the trial, irrespective of the language involved. This requirement will also help ensure that any disruption of trial preparation is avoided. Given the parties' expectation that few of these recordings will be presented, requiring the government to transcribe them should not place a significant burden on it.[2]

IT IS THEREFORE ORDERED that:

a. The government shall disclose to defendants no later than 7 September 2012 all post-arrest recordings it intends to play for the jury at trial.

b. The government shall produce to defendants by the same date transcripts of all such recordings.

c. All transcripts shall be in the form of final transcripts[3] and shall be filed with the court under seal (without need for a separate motion or order to seal) on the date they are produced to defendants.

d. The government shall contract with one or more outside transcription services, as necessary, to produce transcripts of the post-arrest recordings by the 7 September 2012

---

[2] Notably, by excluding the post-arrest recordings from the blanket transcription requirement, the number of hours of produced recordings subject to the transcription requirement drops, from 125 to 98.9, even though the total number of hours of recordings disclosed by the government has increased to at least 187.07. Moreover, most of the post-arrest recordings, which will no longer be subject to the blanket transcription requirement, are in either Albanian or Arabic, which would have necessitated translation before transcription.

[3] The term "final transcript" shall have the same meaning as in the 2 May 2012 Order. (2 May 2012 Order 5 ¶ 5.d). It means a complete transcription of a recording, including an English translation of all foreign words. A final transcript shall not be amended without prior approval of the court.

4

deadline.[4]  This directive does not preclude the government from using the FBI Language Services Division ("LS Division") for transcription, but the government may use it only to the extent that the required transcription can be completed by the prescribed deadline.

**3.     Transcripts of Pre-Arrest Recordings (both produced and unproduced).**  As indicated, there are 29.7 hours of produced pre-arrest Albanian recordings.  Of these, the government intends to present 8.0 hours at trial.  It has almost completed transcription of 1.8 hours, leaving 6.2 hours to transcribe.[5]  The number of hours of unproduced pre-arrest Albanian recordings the government may present at trial is unknown, pending its review of these recordings.  It appears to anticipate that the number will be relatively small.  The government is agreeable to preparing and producing to defendants transcripts of the pre-arrest Albanian recordings it intends to play at trial, but objects to preparing transcripts of any of the remaining pre-arrest Albanian recordings.

In the case of the English recordings, there are, as indicated, a total of 69.2 hours that have been produced.  Of them, the government intends to present at trial a maximum of 29.2 hours.  There are an indeterminate number of hours of unproduced pre-arrest English recordings that the government may use at trial, although, as with the unproduced pre-arrest Albanian

---

[4] The government argues that the experience in the case of *United States v. Daniel Patrick Boyd*, No. 5:09-CR-216-FL (E.D.N.C.) shows that use of private contractors for transcription is not workable.  As explained by the court at length at the conference, that argument is not valid.  The difficulties with transcription in that case were rooted primarily in the poor quality of many of the recordings.  That is not an issue here.  In addition, there was a need for more rigorous quality control than was initially in place. From the outset, the parties here should review transcripts promptly after they are received to ensure that any concerns regarding quality (*e.g.*, formatting, manner of identification of speakers) can be addressed timely.

[5] While the number of hours completed reflects the latest information available to the court, the court assumes that the government has since completed additional transcription because the court never relieved it of its transcription obligations set forth in the 2 May 2012 Order and, by the terms of that order, the obligation remained in effect, notwithstanding the pendency of its motions to reconsider and for extension of time.  (2 May 2012 Order 6 ¶ 5.f).  As in that order, the filing of a motion for modification of the schedules herein, or for relief from any other deadline or provision in this order, shall not suspend the obligation to comply, and the parties shall comply with the schedule and the other provision of this order unless and until relieved from doing so by further order of the court.  No such motion shall be made without prior consultation with the other parties regarding their position on the proposed modifications.

recordings, the government appears to believe that the potential volume of such recordings is limited. The government is not agreeable to preparing and producing to defendants transcripts of all the pre-arrest English recordings it intends to play at trial. Instead, it agrees to prepare and produce only those transcripts which themselves will be presented, recognizing that transcripts ordinarily would not be presented for English recordings.[6] The government objects to preparing transcripts of the remaining pre-arrest English recordings.

The court finds unconvincing the government's arguments in support of its attempt to limit its obligation to prepare transcripts of the pre-arrest recordings. While it continues to say it does not require transcripts of all the pre-arrest recordings for its own use, Shkumbin Sherifi and Elshiekh have represented that they do need transcripts of all these recordings. Thus, even if the government does not intend to use transcripts of recordings, there are parties that intend to.

The government attempts to demonstrate that, notwithstanding these claims of need, many of the pre-arrest Albanian recordings are irrelevant and therefore of no actual value to defendants. But Elshiekh expressly rejects that contention in her response to the government's motion for reconsideration. Moreover, the government is not in the best position to judge what may or may not be relevant to the defense in a prosecution. In addition, because all defendants have been charged with conspiracy, thereby signifying that statements by any one of them may be admissible against the others, effective review by all defendants of all the recordings is important for their trial preparation. *See United States v. Green*, 144 F.R.D. 631, 636 (W.D.N.Y. 1992).

---

[6] The recordings themselves are the evidence, not the transcripts, and the transcripts are used simply to assist the jury in understanding the recordings. *See United States v. Boyd*, No 5:09-CR-216-FL, 2011 WL 3917428, at *2 (E.D.N.C. 2011) (recognizing the "well-established law that transcripts are merely an aid to help understand the audio recordings" (*citing United States v. Capers*, 61 F.3d 1100, 1107 (4th Cir. 1995)). Obviously, if the recordings are in English, the need for transcripts should be minimal. While poor recording quality could conceivably justify use of transcripts for English recordings, the government has represented that the quality of the recordings is good.

Having transcripts of the recordings would unquestionably facilitate that review. That is particularly true with respect to the Albanian recordings because, among other reasons, no defense counsel in this case speaks Albanian and neither does Elshiekh. Even in the case of the English recordings, it takes substantially less time to read a transcript than to listen to a recording. Moreover, having a transcript of a recording obviously makes analysis and other work relating to it substantially easier. Thus, transcription of all the pre-arrest recordings would not be a useless act, as the government suggests.

The government's further contention that preparation of the transcripts would be unduly expensive is also ill-founded. Its argument is based on estimates of the time and cost required for transcription that are, on their face, wildly excessive. For example, it asserts that the translation and transcription of the 29.7 hours of pre-arrest Albanian recordings by either the LS Division or an independent contractor would require 1,782 man hours, or 222.8 work days. This reflects a ratio of at least one hour of work for each minute of recordings. Thus, the government estimates that it would take almost an entire year of work to translate and transcribe less than four workdays worth of recordings. While there would be essentially no cost if the LS Division were used, the estimated cost for an independent contractor provided by the government was $115,884, representing the rate of $4,400 for every hour of recordings.

At the court's direction, the Clerk's Office obtained quotations for transcription of the 29.7 hours of Albanian from two commercial services. Both estimated that the job would require less than two weeks of work and cost less than $5,000.[7]

The situation with respect to the cost of transcribing the pre-arrest English recordings is comparable. The government stated at the conference that it had, to date, paid $6,000 for the

---

[7] One quotation was for $3,600 and the other for $4,400. At the government's request, the court provided the names of the two transcription companies providing the quotations.

transcription of 6 hours of English language recordings. In contrast, the Clerk's office estimates that 6 hours of a trial transcript would cost only approximately $1,300.[8] In short, it appears that transcription (again, including translation as necessary) of all the pre-arrest recordings can be accomplished at reasonable rates that do not make such transcription cost prohibitive.

In any event, the court can adequately address the government's concern about having to bear the cost of preparing transcripts of recordings it does not plan to use by providing it the opportunity to seek partial payment from defendants—that is, through Criminal Justice Act funds—of the reasonable costs it incurs for such transcripts. The court assumes that the government will need to contract with a commercial provider to assist with the transcription because the amount of time required by the LS Division is not consistent with the 5 November 2012 trial date. The court emphasizes that only reasonable costs would be subject to reimbursement by defendants. The exorbitant estimates the government provided are not reasonable on their face.

Although defendants may ultimately have to share the costs of the transcripts, there are compelling reasons for placing on the government the burden of preparing them in the first instance. One is the relatively ready availability of funding to the government. In contrast, defendants have to seek court approval for funding. Given the costs likely involved, approval would ultimately be required at the Fourth Circuit level.[9] The process of applying for and obtaining approval could unduly delay completion of the transcripts. In addition, the court

---

[8] The rate for transcripts established by the Judicial Conference is $3.65 per page for an ordinary transcript. *See* http://jnet.ao.dcn/District/Court_Reporting/Transcript_Fees.html (last visited 11 June 2012). According to Clerk's Office personnel, court reporters typically estimate that one page of trial transcript contains one minute of testimony. Thus, 6 hours of transcription would cost approximately $1,314 (6 hours x 60 minutes x $3.65).

[9] Approval is required by the Chief Circuit Judge when the amount exceeds $2,400.00. *See* 18 U.S.C. § 3006A(e)(3).

believes the government is better equipped than defendants to handle the administrative tasks associated with having the transcripts prepared.

The government argues that neither Rule 16 nor *Brady v. Maryland*, 373 U.S. 83 (1963) requires it to provide transcripts of the pre-arrest Albanian recordings it does not intend to play at trial, relying on case law outside the Fourth Circuit. *See, e.g., United States v. Zavala*, 839 F.2d 523, 528 (9th Cir. 1988); *United States v. Parks*, 100 F.3d 1300, 1307 (7th Cir. 1996). Those cases are distinguishable on their facts. For example, *Zavala* involved 9,200 recordings in a foreign language (*i.e.*, Spanish), substantially more than in this case. In *Parks*, while the volume of records was substantially lower than in *Zavala*—61 hours—the defendant had access to the recordings for over a year before trial, much longer than here. Indeed, with the trial now just five months away, defendants still do not necessarily have all the pre-arrest Albanian recordings, as discussed. Nor in these cases did the court provide a mechanism for partial reimbursement of the government by the defendants.

Moreover, the case law the government cites does not purport to bar courts from exercising their inherent authority to supervise discovery in a criminal case. *See United States v. Williams*, 792 F. Supp. 1120, 1123 (S.D. Ind. 1992) (holding that "a court has a certain inherent authority to order and supervise discovery in a criminal case above and beyond any of the mentioned rules"). The directives in this Order that the government prepare transcripts are based on this authority.

As noted by one court, "[w]here warranted by the circumstances, courts have required the government to bear certain costs of discovery." *United States v. Green*, 144 F.R.D. 631, 636-37 (W.D.N.Y. 1992) (collecting cases in which courts have provided this relief, including one in which the government was ordered to provide defendants with rough transcripts of 1,200 hours

of recorded conversations, *see United States v. DeLuna*, 31 CRL 2406-07 (W.D. Mo. 1982)). In *United States v. Freedman*, the Eleventh Circuit affirmed the district court's order directing the government to provide, at its own expense, copies of material documents to defendants. *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir. 1982). The court explained that "[a]lthough Rule 16 does not mandate that the government supply the defendants with discovery material, neither does it expressly prohibit the trial court from entering such an order pursuant to its discretionary authority." *Id*. The court further held that in exercising this discretion, courts should be "guided by equitable principles such as reasonableness of the cost, hardship or prejudice to one party or the other, and efficient judicial disposition of criminal cases." *Id*. at 1366-67. The court has followed these precepts in fashioning this order.

Based on the directives regarding transcription set forth in this order and other relevant considerations, modification of the schedule for transcript preparation in the 2 May 2012 Order is necessary. For instance, that schedule applied to the transcription of all recordings whereas the court has now adopted a separate procedure for transcripts of post-arrest recordings. In addition, it is appropriate that the schedule give priority to transcription of the recordings the government intends to play at trial. While the schedule needs to continue to encompass transcription of Albanian and English recordings, establishment of a specific accelerated deadline for the Albanian (and any Arabic)[10] recordings is appropriate because of the additional time defendants may require due to the potential for issues relating to translation. In addition, the inclusion of the specific number of hours of recordings to be completed at each deadline, as set out in the existing schedule, is no longer feasible because of the potential need to transcribe

---

[10] While the produced pre-arrest recordings do not contain any Arabic, it is the court's understanding that no determination has yet been made whether the unproduced recordings do, as the table set forth previously shows.

some of the 300 hours of unproduced recordings. The requisite changes are reflected in the schedule below.

By its oral motion at the conference for the exchange of transcripts, the government requested that the court require the parties to confer and attempt to resolve any differences in transcripts they intend to present at trial. Defendants were agreeable to this proposal. Having such a process is essential to an orderly trial, and the court will require it.

IT IS THEREFORE ORDERED as follows:

a. The government shall produce to defendants:

(i) Transcripts of a cumulative total of at least 50% of all pre-arrest recordings no later than 20 July 2012.

(ii) Transcripts of a cumulative total of at least 75% of all pre-arrest recordings no later than 10 August 2012.

(iii) Transcripts of all pre-arrest Albanian (or Arabic) recordings no later than 10 August 2012.

(iv) Transcripts of a cumulative total of 100% of all pre-arrest recordings no later than 7 September 2012.

b. The government shall have transcribed first the recordings it intends to play at trial. It is these recordings that are likely to be of greatest interest to defendants.

c. All transcripts shall be in the form of final transcripts and shall be filed with the court on the date they are produced to defendants under seal (without need for a separate motion or order to seal).

d. The government shall contract with one or more outside transcription services, as necessary, to produce transcripts of the pre-arrest recordings in accordance with the foregoing.

This directive does not preclude the government from using the LS Division for transcription, but the government may use it only to the extent that the required transcription can be completed in accordance with the foregoing schedule.

e.  No later than 25 June 2012, the government shall file a notice of compliance demonstrating that it has contracted for transcription services, including the name and address of each service with which it has contracted.

f.  Within 30 days after the completion of all the foregoing transcription, the government may move for reimbursement of the reasonable costs it incurred in having the transcripts prepared for recordings it does not plan to present at trial.

g.  The parties shall confer regarding and develop a proposal for the identification and resolution of any differences in the respective versions of transcripts they intend to present at trial and the method of presenting different versions of transcripts at trial, if there are differences that must be decided by the jury. The parties shall file such proposal no later than 28 June 2012. Separate proposals shall be filed in the event the parties are unable to agree on a joint proposal.

4.  **Rolling Production.**  The production ordered herein is subject to the requirement in the 2 May 2012 Order that it be done on a rolling basis.  (2 May 2012 Order 7 ¶ 6). Specifically, materials shall be produced as soon as practicable after they are ready for production without awaiting the preparation of other materials for production.

5.  **Next Status Conference**.  As discussed at the conference, the next status conference shall be held on 2 July 2012 at 2:00 p.m. in the 5th floor courtroom of the Terry Sanford Federal Building and Courthouse, 310 New Bern Avenue, Raleigh, North Carolina. All counsel of record, including stand-by counsel for defendant Hysen Sherifi, are DIRECTED to

attend.  Further, the United States Marshal is DIRECTED to produce defendant Hysen Sherifi for the hearing.  The presence of defendants Shkumbin Sherifi and Elshiekh is not required.

The provisions related to preparation for status conferences set forth in ¶ 10 of the 2 May 2012 Order shall apply.  After the parties have conferred to develop a joint agenda, they may, by joint motion, request cancellation of the conference.

## CONCLUSION

For the reasons and on the terms set forth above, the government's motions for reconsideration of the 2 May 2012 Order (D.E. 128), extension of time (D.E. 132), and exchange of transcripts (*see* 1st Minute Entry after D.E. 136) are ALLOWED IN PART AND DENIED IN PART.  The provisions herein regarding the schedule for the production and filing of transcripts supersede the provisions of ¶ 5.e. of the 2 May 2012 Order.

SO ORDERED, this the 15th day of June 2012.

_____
James E. Gates
United States Magistrate Judge